1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                      EASTERN DISTRICT OF CALIFORNIA

10

11   Larry Tamakloe,                            No.  1:24-cv-00053-KES-CDB

12              Plaintiff,                       ORDER GRANTING VERTEX AEROSPACE,
                                                 LLC'S MOTION TO DISMISS PURSUANT
13        v.                                     TO FRCP 12(B)(1) AND 12(B)(6)

14   Vertex Aerospace, LLC,                      Doc. 16

15              Defendant.

16

17        Defendant Vertex Aerospace, LLC ("Vertex"), moves to dismiss plaintiff Larry

18   Tamakloe's complaint for lack of jurisdiction and failure to state a claim, under Federal Rules of

19   Civil Procedure 12(b)(1) and 12(b)(6).  Doc. 16.  The motion is fully briefed.  *See* Docs. 18

20   (Opp'n); 19 (Reply).  For the reasons stated below, the Court grants in part and denies in part

21   Vertex's motion to dismiss.

22   **I.    BACKGROUND**[1]

23        Tamakloe was hired by Vertex in September 2021 and was terminated in March 2023.

24   Doc. 18-3 ¶ 8.  Tamakloe is African.  *Id.* ¶ 16.  From the time of his hiring, Tamakloe's

25   supervisor, Joshua Gaines, subjected him to discriminatory comments about his African race and

26

27   _____

[1]  This recitation of facts is taken from Tamakloe's complaint.  Doc. 18-3.  The allegations are
     assumed to be true for the purpose of the pending motion to dismiss unless otherwise noted.

28

                                           1

accent.  *Id.* ¶ 9.

In September 2022, Tamakloe emailed the personnel manager, the owner of the company, and a human resources representative about the hostile work environment he was experiencing. *Id.* ¶ 10.  The personnel manager told Tamakloe not to make a complaint or to email anyone because there would be consequences.  *Id.*  In October 2022, Tamakloe was summoned to the human resources department for a meeting to discuss his prior complaint, and the human resources representative advised him that there would be an investigation and that they would speak with plaintiff and his supervisor separately.  *Id.* ¶ 11.  Tamakloe was expecting a further update, but human resources never met with him again regarding his complaint.  *Id.*

In February 2023, Tamakloe and his supervisor discussed company procedures for managing chemical waste.  *Id.* ¶ 12.  Later that day, the supervisor emailed Tamakloe asking for input regarding the company's procedure.  *Id.*  In response, Tamakloe re-raised the issue of his treatment by the supervisor.  *Id.*

Tamakloe was suspended for insubordination in March 2023.  *Id.* ¶ 13.  He attempted to return to work several days later but was informed that his suspension was extended indefinitely. *Id.*  He was terminated on March 13, 2023, for disrespectful behavior to his supervisor, failure to carry out assigned tasks, and for working on tasks not assigned to him.  *Id.* ¶ 14.  Tamakloe asserts he was terminated on account of his race and his complaints about safety and code violations.  *Id.* ¶ 15.

Thereafter, Tamakloe filed two administrative Equal Employment Opportunity Commission ("EEOC") claims and received a right to sue letter after each claim.  *Id.* ¶ 17. Tamakloe filed this lawsuit on January 10, 2024, asserting five claims: claims one, two, and three allege discrimination, harassment, and retaliation in violation of Title VII (42 U.S.C. §§ 2000e *et seq.*); claim four alleges wrongful termination and retaliation in violation of 42 U.S.C. § 1981; and claim five alleges violation of the Whistleblower Protection Act (5 U.S.C. § 2302).[2]

---

[2]  Tamakloe's complaint labels the Whistleblower Protection Act claim as the seventh cause of action, but the complaint contains only five causes of action.

2

1   **II.    LEGAL STANDARD**

2        **A.  Rule 12(b)(1)**

3        Under Federal Rule of Civil Procedure 12(b)(1), a party may move to dismiss a claim

4   based on lack of subject matter jurisdiction.  *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598

5   F.3d 1115, 1123 (9th Cir. 2010).  A Rule 12(b)(1) challenge to jurisdiction may be facial or

6   factual.  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  In a facial attack

7   under 12(b)(1), a presumption of truthfulness attaches to the allegations in the complaint, and the

8   court is limited to the four corners of the pleading in determining whether it has jurisdiction over

9   the matter.  *Thornhill Publ'g Co. v. Gen. Tel. Elec.*, 594 F.2d 730, 733 (9th Cir. 1979).  In

10  contrast, under a factual attack, a district court may consider evidence regarding jurisdiction and

11  rule on that issue prior to trial, resolving factual disputes where necessary.  *Safe Air for Everyone*,

12  373 F. 3d at 1039.  If the moving party brings a factual attack, the court may resolve the factual

13  disputes, looking beyond the complaint to matters of public record, without presuming the

14  truthfulness of the plaintiff's allegations.[3]  *White v. Lee,* 227 F.3d 1214, 1242 (9th Cir. 2000).

15       **B.  Rule 12(b)(6)**

16       A motion to dismiss for failure to state a claim upon which relief can be granted under

17  Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint.  *Navarro v.*

18  *Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8(a) requires that a pleading contain "a short and

19  plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a);

20  *see also Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009).  Under federal notice pleading standards,

21  the complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon

22  which it rests."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007) (internal citation and

23  quotations omitted).  "This simplified notice pleading standard relies on liberal discovery rules

24  and summary judgment motions to define disputed facts and issues and to dispose of

25  unmeritorious claims."  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).

26

27  ――――――――――――――――
    [3] Vertex moves to dismiss under 12(b)(1) on the ground that Tamakloe failed to timely file his
    administrative charge with the EEOC.  However, as addressed below, administrative exhaustion
28  is not a jurisdictional issue.  *See Fort Bend Cty. v. Davis*, 587 U.S. 541, 550–51 (2019).

On a motion to dismiss under Rule 12(b)(6), the factual allegations of the complaint must be accepted as true. *Cruz v. Beto*, 405 U.S. 319, 322 (1972). A court must give the plaintiff the benefit of every reasonable inference to be drawn from the "well-pleaded" allegations of the complaint. *Retail Clerks Int'l Ass'n v. Schermerhorn*, 373 U.S. 746, 753 n.6 (1963). A plaintiff need not allege "'specific facts' beyond those necessary to state his claim and the grounds showing entitlement to relief." *Twombly*, 550 U.S. at 570 (internal citation omitted).

If a court dismisses a complaint for failure to state a claim, it should "freely give leave" to amend "when justice so requires." Fed. R. Civ. P. 15(a)(2). The "underlying purpose of Rule 15 [is] to facilitate decisions on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (cleaned up). However, a court may deny leave to amend where amendment would be futile. *See Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 532 (9th Cir. 2008).

### C. <u>Requests for Judicial Notice</u>

Vertex requests that the Court take judicial notice of Tamakloe's administrative EEOC claims, certain interview notes and related EEOC administrative documents, and court documents from prior litigation between the parties. *See* Docs. 17, 20. Vertex appears to seek judicial notice of these documents in support of its argument that the Court lacks subject matter jurisdiction because Tamakloe failed to timely file his administrative EEOC charge. However, while administrative claim exhaustion is a prerequisite to suit, it is not a jurisdictional issue. The Supreme Court confirmed in 2019 that Title VII's claim-processing rules, while mandatory, are non-jurisdictional. *Fort Bend Cnty.*, 587 U.S. at 550–51.

Tamakloe does not challenge Vertex's request that the Court take judicial notice of his March 13, 2023, and January 2, 2024, administrative claims. Tamakloe also cites to these documents in his opposition, along with the EEOC's right to sue letter. Doc. 18 at 5–7; Doc. 18-2 ("Ex. A"). There does not appear to be any dispute as to the authenticity of these documents. Judicial notice of the EEOC administrative claims is therefore appropriate. The Court also takes judicial notice of the other EEOC administrative documents and the prior court filings identified by Vertex, the authenticity of which are not in dispute, but the not the truth of the allegations

4

asserted therein.  *See Overstreet v. Living Spaces Furniture, LLC*, No. CV-23-00248-PHX-ROS, 2023 WL 4408269, at * 3 (D. Ariz. Jul. 7, 2023) (noting that, under Ninth Circuit law, "[j]udicial notice is appropriate for records and reports of administrative bodies" and that "[d]istrict courts in the Ninth Circuit routinely take judicial notice of portions of documents from the EEOC") (citations omitted); *Fox v. MHM Health Pros. LLC*, No. CV-23-00190-PHX-DWL, 2024 WL 4364133, at *5 (D. Ariz. Sept. 30, 2024) (judicial notice of EEOC charges and court filings appropriate on motion to dismiss).

## III.    ANALYSIS

### A.  Whistleblower Protection Act Claim

Vertex moves to dismiss Tamakloe's claim brought under the Whistleblower Protection Act, 5 U.S.C. § 2302, for lack of jurisdiction, as the Act applies only to federal employees and does not provide a private right of action in district court.  Doc. 16-1 at 16; *see also French v. Wash. State Dep't of Health*, 735 Fed. Appx. 367, 367 (9th Cir. 2018) ("The district court properly dismissed [plaintiff's] WPA claims for lack of subject matter jurisdiction because the WPA applies to only federal employees of executive agencies."); *Borrell v. United States Int'l Communications Agency*, 682 F.2d 981, 987 (D.C. Cir. 1982) (finding no private right of action). Tamakloe acknowledges that the court lacks jurisdiction over this claim.  Doc. 18 at 9. Accordingly, the motion to dismiss is granted as to this claim, without leave to amend.

### B.  Timeliness of Administrative Filing of Title VII Charge with EEOC

Vertex contends that Tamakloe's Title VII claims are barred because he untimely filed his administrative EEOC claim.  Doc. 16-1 at 19.  To pursue a Title VII claim, the plaintiff must have timely filed a charge with the EEOC.  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 644 (9th Cir. 2004).

Title VII establishes two potential time limitations periods within which a plaintiff must file an administrative charge with the EEOC.  *See* 42 U.S.C. § 2000e–5(e)(1); *MacDonald v. Grace Church Seattle*, 457 F.3d 1079, 1081–82 (9th Cir. 2006).  Generally, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last act of discrimination.  *Id.*  However, the limitations period is extended to 300 days if a plaintiff "has

1    initially instituted proceedings with a State or local agency with authority to grant or seek relief

2    from such practice."  42 U.S.C. § 2000e–5(e)(1).

3        Under Title VII, state agencies are authorized to investigate and enforce Title VII claims

4    pursuant to "work sharing agreements" with the EEOC.  42 U.S.C. § 2000e–8(b); 29 C.F.R.

5    § 1626.10(c).  The California Department of Fair Employment and Housing ("DFEH") and the

6    EEOC have such a work share agreement.  *See EEOC v. Dinuba Medical Clinic*, 222 F.3d 580,

7    585 (9th Cir. 2000) (constructive filing is made possible by "worksharing agreements," which

8    designate the EEOC and the state agency each other's agents for the purpose of receiving

9    charges).  Charges filed with either the EEOC or the DFEH are deemed "constructively filed"

10    with the other.  29 CFR § 1626.10(c); *Laquaglia v. Rio Hotel & Casino, Inc.*, 186 F.3d 1172,

11    1175–76 (9th Cir.1999); *Dang v. Solar Turbines Inc.*, No. 07cv520-MMA(POR), 2009 WL

12    10671924, at *4 (S.D. Cal. Apr. 8, 2009) ("Charges filed with either agency are automatically

13    forwarded to the other.").  These work sharing agreements are intended to eliminate duplication

14    of effort between the agencies and to provide an efficient procedure for claimants to seek redress

15    for their grievances.  *See Laquaglia*, 186 F.3d at 1177.

16        Tamakloe was terminated on March 13, 2023.  He filed an initial administrative claim

17    with the DFEH on March 13, 2023, alleging discrimination occurring in June 2022, Doc. 17 at 6–

18    7, but he did not further pursue that claim in court.  On January 2, 2024, Tamakloe filed a

19    subsequent administrative claim directly with the EEOC, alleging discrimination between June 1,

20    2022 and March 13, 2023.  *Id.* at 22–23.  If the 180 day time to file an administrative charge with

21    the EEOC applies, Tamakloe's claims are time barred as, by the time he filed his administrative

22    claim on January 2, 2024, more than 180 days had passed since March 13, 2023.  If the 300 day

23    time to file applies, his claims would not be time barred, as he submitted his claim within 300

24    days of March 13, 2023.

25        "Whether a plaintiff in a Title VII has timely exhausted . . . administrative remedies is an

26    affirmative defense, so the defendant bears the burden of pleading and proving it."  *Fox*, 2024

27    WL 4364133, at *15 (citation omitted).  In *Fox*, the court reasoned that resolving administrative

28    exhaustion on a motion to dismiss was premature and was more properly addressed at the

1    summary judgment stage.  *Id.*  The Ninth Circuit has held that failure to exhaust is cognizable at

2    the pleading stage only "in the rare event that a failure to exhaust is clear on the face of the

3    complaint."  *McIntyre v. Eugene Sch. Dist.*, 976 F.3d 902, 909 n.6 (9th Cir. 2020); *see also Lopez*

4    *v. Dep't of Transp.*, No. 2:25-cv-00707 WBS SCR, 2025 WL 1643625, at *1 (E.D. Cal. Jun. 10,

5    2025) (denying motion to dismiss Title VII claims).

6          Here, Tamakloe has adequately alleged administrative exhaustion on the face of his

7    complaint.  The complaint alleges that, "[p]rior to filing his complaint, [Tamakloe] fulfilled any

8    legal requirement and/or exhausted any administrative remedy imposed on him by having filed

9    the substance of claims alleged herein with the [EEOC], and [he] received a Right to Sue letter

10    from the EEOC."  Compl. ¶ 6.  Tamakloe further alleges that he "exhausted his administrative

11    remedies prior to filing, commencing, and serving the . . . action."  Compl. ¶ 6.

12                    **1.    Applicable Filing Deadline and Federal Enclave Doctrine**

13          Vertex argues that the 180-day deadline to file with the EEOC applies, rather than the

14    300-day deadline, because Tamakloe's complaint includes the brief allegation that "[t]he

15    defendants conduct business in this district within a federal enclave" (*see* Doc. 18-3 ¶ 6), and the

16    California state agency does not have authority over claims arising on a federal enclave.  This

17    argument is unpersuasive at this stage in the proceedings, as the complaint does not allege that the

18    location where Tamakloe worked at Edwards Air Force Base was on a federal enclave.[4]  Nor did

19    the parties meaningfully brief the issue.

20          "Whether federal enclave jurisdiction exists is a complex question, resting on such factors

21    as where the events underlying the action occurred on the property, whether the federal

22    government exercises exclusive or concurrent jurisdiction over the property, when the property

23    became a federal enclave and what the state law was at that time, whether that law is consistent

24    with federal policy, and whether it has been altered by national legislation."  *Zuniga v. Chugach*

25    *Maint. Servs.*, No. CVF060048AWILJO, 2006 WL 769317, at *4 (E.D. Cal. Mar. 24, 2006)

26    _____

27    [4] In his opposition to the motion to dismiss, Tamakloe claims that some of his work also occurred
      at the Neil A. Armstrong Flight Research Center Building 703 in Palmdale, California, which, he
      "reasonabl[y] believes," is not on a federal enclave.  Docs. 18 at 6–7; 18-1 at ¶¶ 3–4.

28

7

1  (citation omitted).  Only federal law applies on a federal enclave under exclusive federal

2  jurisdiction, except to the extent Congress has otherwise provided.  *See Pac. Coast Dairy v. Dep't*

3  *of Agric. of Cal.*, 318 U.S. 285, 294 (1943).

4      The EEOC regulations provide that the 180-day time limit for filing claims applies if the

5  state agency lacks subject matter jurisdiction over a charge:

6      A jurisdiction having a [Fair Employment Practices ("FEP")] agency without
       subject matter jurisdiction over a charge is equivalent to a jurisdiction having no
7      FEP agency.  Charges over which a FEP agency has no subject matter jurisdiction
       are filed with the Commission upon receipt and are timely filed if received by the
8      Commission within 180 days from the date of the alleged violation.

9  29 C.F.R. § 1601.13(a)(2).  A FEP agency means "a State or local agency which the [EEOC] has

10  determined satisfies the criteria stated in section 706(c) of title VII [42 U.S.C. § 2000e–5(c)]."  29

11  C.F.R. § 1601.3(a); *see also* 29 C.F.R. § 1601.70.  Here, "[t]he DFEH is a designated FEP agency

12  under Title VII."  *Davenport v. Bd. of Trs. of State Ctr. Cmty. Coll. Dist.*, 654 F. Supp. 2d 1073,

13  1088 (E.D. Cal. Aug. 25, 2009).

14      Whether a FEP agency, such as DFEH in this case, has jurisdiction determines whether

15  the 180-day or 300-day time limit applies.  *MacDonald*, 457 F.3d at 1085.  The issue of whether

16  Tamakloe worked on a federal enclave is potentially dispositive of whether the DFEH had

17  jurisdiction over Tamakloe's EEOC charges, and, therefore, which time limit applied.  If DFEH

18  did not have "authority to grant or seek relief" regarding Tamakloe's charges, as would be the

19  case if the federal enclave doctrine applied, then the 180-day deadline controls and Tamakloe's

20  Title VII claims would be time-barred.  On the other hand, if the DFEH did have jurisdiction over

21  Tamakloe's claims, then Tamakloe would be entitled to the longer 300-day filing deadline.

22      This issue cannot be resolved at the pleadings stage.  There is no allegation in the

23  complaint, nor does Vertex point to any evidence, "that the United States formally accepted

24  exclusive federal jurisdiction over Edwards Air Force Base," or "that the State of California ever

25  consented to the exclusive federal jurisdiction of the United States" over Edwards Air Force Base.

26  *Zuniga*, 2006 WL 769317, at *7.  Nor has Vertex cited any case "finding that Edwards Air Force

27  Base is a federal enclave over which the United States has exclusive federal jurisdiction."  *Id.*

28  The Court cannot determine at this pleadings stage that the complaint is time barred for failure to

1    comply with the administrative claim filing deadline, because Vertex has failed to show that the

2    180-deadline applied rather than the 300-day deadline.

3         In rebuttal, Vertex argues Tamakloe is bound not only by the assertion in his complaint,

4    but also by a prior statement made in a different lawsuit that Edwards Air Force Base is a federal

5    enclave, and that he is estopped from contending otherwise.  Doc. 19 at 14–15.  However, judicial

6    estoppel does not apply to Tamakloe's prior assertion in the previous lawsuit.  In that case,

7    Tamakloe filed a state court class action against Vertex alleging wage-and-hour violations.

8    Vertex removed the matter to federal court and subsequently filed a motion to dismiss for lack of

9    subject matter jurisdiction and failure to state a claim.  Doc. 17 at 30–45.  Tamakloe filed a non-

10   opposition to Vertex's motion, asserting that Edwards Air Force Base was a federal enclave and

11   asking the court to dismiss the action without prejudice and without reaching the merits of the

12   12(b)(6) motion.  Doc. 17 at 75.  There is no evidence the court relied on Tamakloe's statement or

13   made any determination at all regarding the status of Edwards Air Force Base.  Rather, in a

14   minute order, the court construed Tamakloe's non-opposition filing as a notice of voluntary

15   dismissal pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i), and the case was terminated

16   without prejudice by operation of law.  *See Tamakloe v. Vertex Aerospace, LLC*, No. 1:23-cv-

17   01049-CDB (E.D. Cal. Sept. 12, 2023) (minute order closing case).  "Dismissal without prejudice

18   is a dismissal that does not operate as an adjudication on the merits, Rule 41(a)(1), and thus does

19   not have res judicata effect."  *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990)

20   (cleaned up).  Therefore, judicial estoppel does not apply to Tamakloe's prior statement.

21                    **2.    Filing of Tamakloe's January 2024 Claim**

22        Vertex also contends that Tamakloe's Title VII claims are time-barred because he filed his

23   January 2024 administrative charge initially with the EEOC, rather than the state agency.

24   Doc. 16-1 at 19.  Vertex asserts that, even if the 300-day deadline applied, "the charging party

25   must initially file with the state agency," and Tamakloe "expressly declined to submit his January

26   2024 charge to the [DFEH]."  Doc. 16-1 at 10.  Vertex is incorrect.

27        Where the state and the EEOC have a workshare agreement, the 300-day deadline applies

28   even when a plaintiff files first with the EEOC.  Where, as here, the EEOC and the state agency

9

1    have entered into a worksharing agreement, "a complainant ordinarily need not file separately

2    with federal and state agencies" and "may file her charge with one agency, and that agency will

3    then relay the charge to the other." *Fort Bend Cty.*, 587 U.S. at 544; *see also Flores v. Merced*

4    *Irrigation Dist.*, 758 F. Supp. 2d 986, 993 (E.D. Cal. Dec. 9, 2010) (applying 300-day limitations

5    period where plaintiff first filed operative claim with the EEOC and not with California state

6    agency).  Moreover, Tamakloe's administrative claim is deemed filed with the DFEH as of

7    January 2, 2024, when he filed it with the EEOC.  As the EEOC and the DFEH have entered into

8    an agreement, for purposes of the timeliness of the claim, "[c]harges received by one agency

9    under the agreement shall be deemed received by the other agency."  29 C.F.R. § 1626.10.

10   Accordingly, Tamakloe's claims are not time barred under this theory.

11

12                    **3.    Comparison of the January 2024 and March 2023**
                             **EEOC Administrative Charges**

13       Alternatively, Vertex asserts that Tamakloe's January 2024 EEOC charge—which is the

14   basis for his federal complaint—is barred because it is essentially the same as Tamakloe's

15   March 2023 EEOC charge, which Tamakloe failed to pursue in federal court.  Vertex contends

16   that the charges share the same factual underpinnings and that the 2024 EEOC claim could not

17   revive the expired 2023 EEOC claim.  Doc. 16-1 at 14–15.

18       Vertex is incorrect that the claims in the March 2023 EEOC charge are substantially

19   similar to the January 2024 EEOC charge underlying the present case.  The January 2024 charge

20   includes allegations concerning a substantially broader period (September 2021 to March 2023)

21   than the March 2023 charge (June 2022).  To the extent there is some limited overlap that would

22   not preclude the bulk of Tamakloe's January 2024 allegations.

23       Tamakloe's complaint alleges that he "fulfilled any legal requirement and/or exhausted

24   any administrative remedy imposed on him by having filed the substance of claims alleged herein

25   with the [EEOC], and has received a Right to Sue letter from the EEOC."  Doc. 18-3 ¶ 17.  The

26   complaint does not allege any particular facts regarding his March 2023 EEOC administrative

27   claim.  Tamakloe's allegations in his March 2023 EEOC claim were limited.  Essentially, he

28   asserted that, in June 2022, he "was subjected to unequal terms and conditions of employment"

1    by his supervisor, Gaines, which "included but were not limited to[,] not being issued safety

2    boots."  Doc. 17 at 6.  Tamakloe also asserted that Gaines is White, and that Tamakloe was

3    "aware of similarly situated individuals not of [his] protected class (Ghanaian) who were not

4    subjected to such unequal terms and conditions."  *Id.*  Tamakloe identified the discrimination as

5    occurring during only one month:  June 2022.  *Id.* at 7.

6         In contrast, Tamakloe's allegations in his January 2024 EEOC claim concern different

7    allegations and a different time period.  Tamakloe alleges that he was "subjected to

8    discriminatory comments about his African race and accent" by his supervisor while employed by

9    Vertex from September 2021 to March 2023, and he alleges that he was wrongfully terminated on

10   March 13, 2023.  *Id.* at 19.  He alleges that on September 6, 2022, he emailed the personnel

11   manager, the owner of the company, and a human resources representative concerning the hostile

12   work environment created by his supervisor, and he claims that they told him not to make a

13   complaint or to email anyone about the issue "because there would be consequences."  *Id.*  The

14   claim indicates that human resources personnel told Tamakloe in October 2022 that there would

15   be an investigation into his complaint, but he alleges that they never followed up to meet with

16   him.  *Id.*  Tamakloe further alleges that, after he again raised the issue in late February of his

17   supervisor's treatment of him, defendant responded by suspending Tamakloe in early March 2023

18   and then terminated him on March 13, 2023.  *Id.*

19        To the extent Tamakloe's Title VII federal claim relies on the limited facts asserted on

20   the face of the March 2023 charge—specifically, the safety boots incident—those allegations are

21   now time-barred.  "However, where the allegations are different, even though related, courts have

22   held that the plaintiff is entitled to rely on the later right-to-sue letter."  *Bill v. Berkeley United*

23   *Sch. Dist.*, No. C 03-4091 SBA, 2004 WL 2075447, at *7 (N.D. Cal. Sept. 16, 2004).

24   Accordingly, Tamakloe may rely on his January 2024 right to sue letter, and to the extent the

25   facts differ from Tamakloe's March 2023 EEOC claim, he is entitled to pursue his Title VII

26   action with respect to the broader allegations he raised in January 2024.

27        Accordingly, the motion to dismiss for failure to timely file an administrative claim with

28   the EEOC is denied.

1      **C.  Failure to State a Claim**

2           **1.      Discrimination Claim**

3           Title VII forbids an employer from discriminating based on an "individual's race, color,

4    religion, sex, or national origin."  42 U.S.C. § 2000e–2(a).  A plaintiff must show by either direct

5    or circumstantial evidence that "the motive to discriminate was one of the employer's motives."

6    *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 343 (2013); *McGinest v. GTE Serv. Corp.*,

7    360 F.3d 1103, 1122 (9th Cir. 2004).  A plaintiff may establish a case for disparate treatment by

8    showing that: (1) he was a member of a protected class; (2) he was qualified for the position and

9    performing the job satisfactorily; (3) he experienced an adverse employment action; and (4)

10   "similarly situated individuals outside [the] protected class were treated more favorably, or other

11   circumstances surrounding the adverse employment action give rise to an inference of

12   discrimination."  *Hawn v. Exec. Jet Mgmt., Inc.*, 615 F.3d 1151, 1156 (9th Cir. 2010) (quoting

13   *Peterson v. Hewlett–Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004)).

14          Tamakloe has alleged that he is African and is a member of a protected class.  Doc. 18-3

15   ¶ 9.  He alleges that he experienced an adverse employment event by being terminated.  *Id.* ¶ 15.

16   However, he does not allege that he was performing the job satisfactorily or that he was qualified

17   for the position; instead, he alleges he was terminated for disrespectful behavior to his supervisor,

18   failure to carry out assigned tasks, or working on tasks that were not assigned to him.  *See*

19   *generally* Doc. 18-3.  As to the fourth element, plaintiff may show "an inference of discrimination

20   in whatever manner is appropriate in the particular circumstances."  *Hawn*, 615 F.3d at 1156

21   (quoting *Diaz v. Am. Tel. & Tel.*, 752 F.2d 1356, 1361 (9th Cir. 1985)).  He may show this by

22   comparison to similarly situated individuals, or any other circumstances "surrounding the adverse

23   employment action [that] give rise to an inference of discrimination."  *Id.* (citation omitted).

24   Indirect, circumstantial evidence challenging the credibility of an employer's motivations must be

25   "specific and substantial."  *Vasquez v. Cnty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003).

26          Here, Tamakloe does not provide any factual assertions in his complaint to support his

27   allegation that he was treated less favorably than other similarly situated non-African employees,

28   and he does not identify any such other employees.  Nor does he allege a sufficient factual basis

1    to show that the employer's motivation to discriminate was based on Tamakloe's race. *Id.*

2         Accordingly, the Court grants the motion to dismiss the discrimination claim (claim one)

3    for failure to state a claim, with leave to amend.

4              **2.    Harassment claim**

5         To establish a claim under Title VII for a hostile work environment based on race, a

6    plaintiff must demonstrate: "(1) that he was subjected to verbal or physical conduct of a racial

7    nature; (2) that the conduct was unwelcome; and (3) that the conduct was sufficiently severe or

8    pervasive to alter the conditions of the plaintiff's employment and create an abusive work

9    environment." *Reynaga v. Roseburg Forest Products*, 847 F.3d 678, 686 (9th Cir. 2017); *see also*

10    *Vasquez v. Cty. of Los Angeles*, 349 F.3d 634, 642 (9th Cir. 2003) (same). "In assessing whether

11    a work environment is sufficiently hostile, the court examines the 'frequency of the

12    discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere

13    offensive utterance; and whether it unreasonably interferes with an employee's work

14    performance.'" *Reynaga*, 847 F.3d at 687 (quoting *Faragher v. City of Boca Raton*, 524 U.S.

15    775, 787–88 (1998). Here, the complaint makes a single, general allegation. Tamakloe alleges

16    that "[f]rom the time he was hired in 2021, [he] was subjected to discriminatory comments about

17    his African race and accent from his supervisor, Joshua Gaines." Doc. 1 at ¶ 9. The complaint

18    does not sufficiently describe the discriminatory comments and their frequency, severity, or

19    context, and it fails to explain whether, and how, such comments interfered with Tamakloe's

20    work performance.

21         Accordingly, the Court grants the motion to dismiss with respect to Tamakloe's harassment

22    claim (claim two) for failure to state a claim, with leave to amend.

23              **3.    Retaliation claim**

24         Title VII prohibits retaliation against an employee for opposing an unlawful employment

25    practice or participating in a Title VII proceeding. 42 U.S.C. § 2000e-3(a). To establish a prima

26    facie Title VII retaliation claim, a plaintiff must sufficiently allege that "(1) she engaged in an

27    activity protected under Title VII; (2) her employer subjected her to adverse employment action;

28    and (3) there was a causal link between the protected activity and the employer's action." *Kama*

1    *v. Mayorkas*, 107 F.4th 1054, 1059 (9th Cir. 2024).  An employee engages in protected activity

2    for purposes of Title VII when he opposes conduct that he reasonably believes to be an unlawful

3    unemployment practice, or when he participates in an EEOC investigation or proceeding.  42

4    U.S.C. § 2000e-3(a).

5        The complaint alleges that, in September 2022, Tamakloe emailed the personnel manager,

6    the company owner, and a human resources representative "concerning the hostile work

7    environment" created by his supervisor, Doc. 1 at ¶ 12, and it alleges that Tamakloe had a

8    meeting with the human resources department in October 2022 "to discuss his complaint," *id.* at

9    ¶ 11, but it fails to allege any further detail concerning Tamakloe's allegations or such

10   discussions.  The complaint also alleges that, in a discussion with his supervisor on February 23,

11   2023, Tamakloe "rais[ed] the issue of [his supervisor's] treatment" of him.  *Id.* at ¶ 12.  But the

12   complaint fails to describe any specifics concerning what he alleged or what he and the supervisor

13   discussed.  The complaint further alleges that Tamakloe was suspended for insubordination in

14   early March 2023 and that, on March 13, 2023, he was terminated for "disrespectful behavior to

15   his supervisor, failure to carry out assigned tasks, and working on tasks that were not assigned to

16   him." *Id.* at ¶¶ 13–14.

17       It is not clear these general allegations sufficiently state that Tamakloe engaged in

18   protected activity.  *See Kurdi v. Cal. Dep't of Transp.*, No. 1:22-cv-00729 JLT EPG, 2023 WL

19   267538, at * 6 (E.D. Cal. Jan. 18, 2023) ("[I]f an employee does not sufficiently allege that [he]

20   opposed discrimination based upon race, color . . . or national origin, [he] cannot claim that [he]

21   engaged in a protected activity.").  Even assuming they did, without further factual detail these

22   allegations fail to establish any causal link between the protected activity and Vertex's

23   termination of Tamakloe.

24       Accordingly, Tamakloe fails to state a Title VII retaliation claim and the motion to

25   dismiss that claim (claim three) is granted, also with leave to amend.

26              **4.    Section 1981 claim**

27       A claim under section 1981 concerns discrimination based on race.  *See White v. Wash.*

28   *Pub. Power Supply Sys.,* 692 F.2d 1286, 1290 (9th Cir.1982) ( "It is well settled that section

1    1981 only redresses discrimination based on plaintiff's race.").  The Supreme Court requires a

2    plaintiff suing under section 1981 to plead and prove race was the "but for" cause of the loss of a

3    legally protected right.  *Comcast Corp. v. Nat'l Assn. of African American-Owned Media,* 589

4    U.S. 327, 341 (2020).  Here, Tamakloe's complaint fails to plead and prove that race was the "but

5    for" cause of the loss of his job.  Instead, he alleges a variety of reasons for his termination: "[o]n

6    information and belief, Defendants terminated Tamakloe because of his complaints about safety,

7    his race, and code violations amongst other complaints as alleged above."  Doc. 18-3 at ¶ 15 (Ex.

8    B).

9          As Tamakloe does not sufficiently plead causation, the Court grants the motion to dismiss

10    the section 1981 claim (claim four) for failure to state a claim, also with leave to amend.

11    ///

12    ///

13    ///

14    ///

15    ///

16    ///

17    ///

18    ///

19    ///

20    ///

21    ///

22    ///

23    ///

24    ///

25    ///

26    ///

27    ///

28

1    **IV.    CONCLUSION**

2         For the foregoing reasons, the Court ORDERS as follows:

3            1.    Defendant's motion to dismiss the Title VII claims for failure to timely file

4               an EEOC administrative claim is DENIED;

5            2.    Defendant's motion to dismiss claim one (Title VII discrimination),

6               claim two (Title VII harassment), claim three (Title VII retaliation), and

7               claim four (Section 1981 claim) for failure to state a claim is GRANTED,

8               with leave to amend;

9            3.    Defendants' motion to dismiss the fifth claim (Whistleblower Protection

10               Act) for lack of jurisdiction is GRANTED, and that claim is dismissed

11               without leave to amend; and

12            4.    Plaintiff shall file a first amended complaint, if any, within thirty days of

13               the entry of this order.

14

15    IT IS SO ORDERED.

16       Dated:   July 2, 2025

17                               UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28